IN THE UNITED STATES BANKRUPTCY COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| POSITIVE HEALTH | § | |
| MANAGEMENT, INC. | § | Case No. 08-31630 |
| *Debtor*. | § | Chapter 7 |
| | § | |
| RANDY WILLIAMS, | § | |
| CHAPTER 7 TRUSTEE | § | ADVERSARY NO. 10-03121 |
| *Plaintiff,* | § | |
| v. | § | |
| | § | |
| COMPASS BANK, ET AL. | § | |
| *Defendants.* | § | |

**COMPASS BANK'S MOTION FOR SUMMARY JUDGMENT
REGARDING REASONABLY EQUIVALENT VALUE**

TO THE HONORABLE JEFF BOHM, UNITED STATES BANKRUPTCY JUDGE:

COMES NOW, Compass Bank and hereby files this its Motion for Summary Judgment Regarding Reasonably Equivalent Value (the "Motion") and would show unto the Court as follows:

**BACKGROUND FACTS**

1. Positive Health Management, Inc. a/k/a Positive Pain Management, Inc. (the "Debtor") filed for relief on March 11, 2008 (the "Petition Date"). Randy Williams was appointed Chapter 11 Trustee and the case was subsequently converted the Debtor's bankruptcy case to Chapter 7 case on March 13, 2009. Randy Williams became the Chapter 7 Trustee ("Trustee").

2. The Trustee filed Adversary No. 10-03121 asserting various claims against Compass Bank and others. Compass Bank has filed three (3) motions to dismiss which have resulted in one (1) cause of action remaining against Compass Bank. That one (1) cause of

930505.20100406/888528.1

action is pursuant to 11 U.S.C. § 548(a)(1)(B)(i)-(iii) and involves six (6) alleged transfers made prior to the Petition Date. *See*, Trustee's Second Amended Complaint for Avoidance of Transfers and Related Relief, ¶¶ 33 & 44, Docket #59.

## UNDISPUTED FACTS

### A. The Loan

3. On August 1, 2003 Compass Bank made a loan (the "Loan") to Zeigler Enterprises II, LLC (the "Borrower") which was secured by real estate and a building at 4242 Medical Drive, Building #5, of The Vistas Office Park Planned Unit Development in San Antonio, Bexar County, Texas (the "Property"). *See*, Tina Kirkland's Affidavit ("Kirkland Affidavit"), ¶¶ 2 & 3, attached hereto as **Exhibit 1**.

4. The Borrower leased the Property to Positive Pain Management, Inc. ("PPM"), Correct Care Clinic, LLC, and Garland Psychological Center. *See*, Kirkland Affidavit, ¶ 6 and Exhibit I thereto. The Debtor operated out of the Property. *See*, Debtor's Voluntary , docket # 1 (Location of Principal Assets of Business Debtor), attached hereto as Exhibit 7.

5. In the process of conducting its due diligence before making the loan to the Borrower, Compass Bank engaged Joseph N. Woller & Company to perform an appraisal report ("Appraisal") on the Property. *See*, Kirkland Affidavit ¶ 2 and Joseph N. Woller's Affidavit ("Woller Affidavit"), ¶ 2. A true and correct copy of the Appraisal is attached to Woller Affidavit as Exhibit A. The Woller Affidavit is attached hereto as **Exhibit 2**. As part of the appraisal process, Mr. Woller performed an income approach to value the Property. Mr. Woller determined, as of the effective date of the Appraisal (July 23, 2003), that the potential monthly economic income for the Property was $11,530.0. *See*, Appraisal, p. 47.

6.	The Loan from Compass Bank to the Borrower was evidenced by a Promissory Note, which was secured by a Deed of Trust, Security Agreement and Financing Statement, and an Absolute Assignment of Leases. *See*, Kirkland Affidavit, ¶ 3 and Exhibits A, B and C thereto. Ronald Ziegler guaranteed the Loan. *See*, Kirkland Affidavit, ¶ 3. Additionally, the Borrower executed an Affidavit Regarding Tenancy and the Debtor executed an Estoppel Certificate of Tenant. *See*, Kirkland Affidavit, ¶¶ 3 & 6. True and correct copies of the Affidavit Regarding Tenancy and the Estoppel Certificate of Tenant are attached as Exhibits I and D to Kirkland Affidavit. A UCC-1 financing statement was filed with the Texas Secretary of State under file number 03-0037964971. A true and correct copy of which is attached to Kirkland Affidavit as Exhibit E. A UCC-3 continuation was filed on April 16, 2008 with the Texas Secretary of State under file number 08-00130825. A true and correct copy of which is attached to Kirkland Affidavit as Exhibit F.

7.	The Loan from Compass Bank was paid off in October or November of 2008. *See*, Kirkland Affidavit, ¶ 1.

**B.	The Debtor**

8.	PPM and Positive Health Management, Inc. ("PHM") are the same company. *See*, Martha Jester's March 11, 2010 Affidavit ("Jester March Affidavit"), p. 1, attached hereto as Exhibit 8. ("Dr. Ziegler… operated a pain management clinic called Positive Pain Management, Inc. On or about March 2006, Dr. Ziegler informed me that the name of the clinic was changed to Positive *Health* Management, Inc.") (Emphasis in original). Mr. Longaker, the Trustee's alleged expert witness, admitted in his deposition that Positive Pain Management and Positive Health Management were the same company. *See*, Longaker Deposition Transcript, p 49, lns. 20-23 (attached hereto as Exhibit 3). Additionally, the 2006 U.S. Tax Return which is

3

an Exhibit to Martha Jester's January 13, 2011 Affidavit ("Jester January Affidavit") and an exhibit relied upon by Mr. Longaker shows a name change without a change of taxpayer identification number. That taxpayer identification number is the same as on the 2007 tax return which is also an exhibit relied upon by Mr. Longaker and is attached to Jester January Affidavit. The Jester January Affidavit is attached hereto as Exhibit 9. Furthermore, Dr. Ziegler caused to be filed an amendment to PPM's Articles of Amendment reflecting a name change. *See*, Texas Secretary of State Articles of Amendment filed with the Secretary of State of Texas under file number 135507500, attached as Exhibit 12 to Longaker's Report. Compass Bank requests the Court take judicial notice of the filing with the Secretary of State of Texas. A true and correct copy of which is attached hereto as **Exhibit 4**. The Trustee has previously alleged that PPM and PHM were the same company. *See*, Trustee's Fourth Amended Complaint for Declaratory Relief and Avoidance of Transfers in Adversary No. 09-3282, Docket No. 57, ¶¶ 12-21. A true and correct copy of that Complaint is attached hereto as **Exhibit 5**. PPM and PHM will be collectively referred to herein as the "Debtor".

9. PPM and PHM were considered by Jester to be one and the same company. *See*, Jester January Affidavit, ¶ 3. In 2006, Dr. Ziegler told Jester that he had changed the name of PPM to PHM. *Id*. Jester prepared the 2006 Federal income tax return for PPM; however, after Jester had signed the return and provided the original to Dr. Ziegler, he whited out the word "Pain" in the name section on the first page of Form 1120S and inserted the word "Health". *Id*. All the other pages of the 2006 tax return reflect the name "Pain" and not "Health". *Id*. The next year while preparing the 2007 tax return for PHM Jester merely picked up the PPM accounts from the close of the 2006 return for the beginning balances for the 2007 return. *Id*. The tax payor identification number is the same on the 2006 and 2007 tax returns because Jester thought

they were the same company. *Id.* A Form 1120S return is an informational return for a sub chapter S corporation. *Id.* True and correct copies of the PHM 2006 and 2007 tax returns are attached to the Jester January Affidavit, as Exhibits A and B, respectively.

### C. The Rent and Loan Payments

10. Martha Jester ("Jester") worked for Dr. Ron Ziegler as an accountant. *See,* Jester March Affidavit, p. 1, Jester January Affidavit, ¶ 2. The Debtor did not pay rent directly to the Borrower. *See,* Jester March Affidavit, p. 3 and Jester January Affidavit, ¶ 7. Mr. Longaker knew rent was being paid but he did not know how or to whom it was being paid. *See,* Longaker Deposition Transcript, p. 59, ln. 22 through p. 60, ln. 16; p. 62, ln. 8 - ln. 16. Mr. Longaker agreed that since rent was being expensed on the tax returns that "one would deduce" that rent was being paid in a manner other than directly to the Borrower. *See,* Longaker Deposition Transcript, p. 62, ln. 17 through p. 63, ln. 9.

11. Jester claimed an expense deduction for Debtor due to its payment of rent on its 2006 and 2007 tax returns. *See,* Jester January Affidavit, ¶ 7. *See,* 2006 and 2007 Tax Returns line 11 attached as Exhibits A and B to the Jester January Affidavit.

12. The rent payments made directly by Debtor to Compass Bank allowed the Borrower to stay relatively current with the Borrower's mortgage obligation and prevented Compass Bank from initiating foreclosure proceedings. *See,* Kirkland Affidavit, ¶ 7. A foreclosure may have dispossessed the Debtor from its leased premises in the Property. *See,* Kirkland Affidavit, ¶ 7 and Estoppel Certificate of Tenant.

13. Compass Bank had a lien on the rent due from the Debtor. *See,* Absolute Assignment of Rents and the UCC-1 financing statement. Attached as Exhibits C and D to

Kirkland Affidavit. The Debtor had executed an Estoppel Certificate of Tenant. *See*, Kirkland Affidavit, ¶ 3 and Exhibit D thereto.

14. Pursuant to the Absolute Assignment of Rents, Compass Bank was entitled to the rental due from the Debtor to the Borrower. The rental amount due on the Property was twice as much as the monthly mortgage payment. The regular monthly mortgage payment was $5,377.19. *See*, Note, Exhibit A to Kirkland Affidavit and Kirkland Affidavit ¶ 4. The payments made on the Note in the amounts of $11,292.15 were for two (2) months' worth of payment plus late fees. *See*, Kirkland Affidavit, ¶ 4.

15. Jester coded the payments by the Debtor to Compass Bank as rent payments and the Debtor deducted the expense from its tax returns. *See*, Jester January Affidavit, ¶ 7. In this case the Debtor, owed the Borrower rent for each month of occupancy. Compass Bank entered into the loan transaction based on the representation from both the Borrower and the Debtor that the Debtor had a lease and would be paying rent to the Borrower. *See*, Kirkland Affidavit, ¶ 6.

16. PPM and PHM occupied space in a San Antonio office building. *See*, Jester January Affidavit, ¶ 6. Jester understood the landlord to be the Borrower. *Id.* From time to time while Jester was engaged as an accountant by Dr. Ziegler, Dr. Ziegler would need to have the mortgage payment made to Compass Bank. *Id.* Jester understood that Compass Bank was the Borrower's lender regarding the Property. *Id.* Jester understood that the Debtor occupied the Property. *Id.* Dr. Ziegler would, from time to time, cause the Debtor to make the mortgage payment directly to Compass Bank. *Id.*

17. Since the Debtor did not pay rent to the Borrower, Jester accounted for the payments made by the Debtor to Compass Bank as rent payments. *See*, Jester January Affidavit, ¶ 7 and the 2006 and 2007 tax returns, line 11 attached as Exhibits A and B thereto. The

930505.20100406/888528.1

Debtor's payments to Compass Bank were accounted for as rent payments and were expensed on the Debtor's tax returns as rent expenses. *Id.* The Debtor's payments to Compass Bank were treated for accounting purposes as rent payments made to the Borrower. *Id.* The Debtor obtained benefits from these transactions, because the payments were considered, as between the Debtor on the one hand and the Borrower on the other to be for the payment of rent due under the lease by and between the Debtor, as tenant, and the Borrower, as the landlord. *Id.* Furthermore, the Debtor expensed the rent on the tax returns which resulted in a deduction against taxable income reported on the K-1 to Dr. Ziegler. *Id.*

18. Had the Debtor not made the mortgage payment for and on behalf of the Borrower, then the Debtor would have had to make rent payments to the Borrower. *See,* Jester January Affidavit, ¶ 9. The Borrower would have then used the rent payment deposit from PPM and PHM to make its mortgage payment to Compass Bank. *Id.* Since the Debtor did not make any rent payment to the Borrower the only way the Borrower could have made the mortgage payments was by having the tenant (the Debtor) make the rent payments directly to Compass Bank. *Id.* From an accounting standpoint the result was the same and both the landlord (the Borrower) and the tenant (the Debtor) benefitted because the Borrower stayed relatively current on its mortgage and was later able to sell the Property and the Debtor was able to maintain its leased space and continue its business activity at the Property. *Id.*

19. Jester believes that a lease existed between the Debtor and the Borrower because Dr. Ziegler so advised her and when Dr. Ziegler was exploring a sale of his businesses it was an item to be disclosed in the due diligence materials. *See,* Jester January Affidavit, ¶ 10.

20. The amount of rent payments made by PPM and PHM varied roughly between $5,500.00 and $11,300.00. *See,* Jester January Affidavit, ¶ 11. It was Jester's understanding that

7

when payments were in the $11,300.00 range that the Debtor was making up for an earlier skipped rent payment. *Id.* Therefore monthly rent was in the approximate amount of $5,500.00 per month. *Id.* This arrangement of the Debtor paying the mortgage payments instead of rent allowed it to effectively pay a below-market rate of rent for the Property. *Id.* While this arrangement had an adverse effect upon the Borrower, it had a beneficial effect upon the Debtor because it resulted in higher profitability to the Debtor. *Id.* This fact is confirmed by the credit approval summary of Texas Capital Bank ("TCB") prepared on November 17, 2006, a true and correct copy of which is attached to the Jester January Affidavit as Exhibit D. *Id.* The TCB write up also reflects that PPM and PHM were the same company, because the write up states that (a) PHM was incorporated in 1995, and (b) PPM changed its name to PHM in 2006. *Id.*

21. As Jester advised the Trustee in her March 2010 Affidavit, neither PPM nor PHM ever made a rent payment directly to the Borrower. *See,* Jester Affidavit, ¶ 12.

**D.  Facts Regarding Ziegler Enterprises II, LLC's Acquisition of San Antonio Building**

22. The Borrower was a tax flow through entity and all tax attributes of the Borrower flowed through and were reported on Dr. Ziegler's personal tax return. *See,* Affidavit of Martha Jester ("Jester Affidavit"), ¶ 2.

23. The Borrower came to Compass Bank to acquire the Property. *See,* Kirkland Affidavit, ¶ 5. In the process of doing its due diligence, Compass Bank engaged Joseph N. Woller to conduct an appraisal. *See,* Kirkland Affidavit, ¶ 2. Joseph N. Woller prepared the Appraisal dated July 25, 2003 which determined the value of the Property to be $730,000.00. *See,* Appraisal attached to Woller Affidavit as Exhibit A.

24. Based in part on the opinions contained in the Appraisal, Compass Bank lent the Borrower $598,400.00 which was evidenced by a Promissory Note dated August 1, 2003 (the

8

"Note") executed by the Borrower. *See*, Kirkland Affidavit, Exhibit 2. The Note was secured by a Deed of Trust executed by the Borrower which pledged the Property to the benefit of Compass Bank. *See*, Kirkland Affidavit, ¶ 3. The Note called for monthly principal and interest payments of $5,377.19. *See*, Kirkland Affidavit, ¶4 and the Note attached thereto as Exhibit A. The Note was also secured by an Absolute Assignment of Rents and by a UCC-1 financing statement. *See*, Kirkland Affidavit, ¶ 3 and Exhibits C and E thereto. The Note was guaranteed by Dr. Ziegler. *See*, Kirkland Affidavit, ¶ 3.

25. The Property was occupied by Positive Pain Management, Inc., Correct Care Clinic, LLC, and Garland Psychological Center. *See*, Jester January Affidavit, ¶ 6; Kirkland Affidavit, ¶ 6 and the Affidavit of Tenancy attached thereto as Exhibit I. The Debtor operated out of the Property. *See*, Debtor's Voluntary Petition, Docket # 1. Compass Bank requests that the Court take judicial notice of the Debtor's Petition. A copy of the Debtor's Petition is attached hereto as Exhibit 7. As part of Compass Bank's collateral package Compass Bank had each tenant sign Estoppel Certificates and received a representation from the Borrower that the three (3) tenants were the only tenants. Each tenant's lease was for a period of five (5) years. *See*, Affidavit of Tenancy attached as Exhibit I to Kirkland Affidavit. The Trustee, Randy Williams, testified that he believed the Property was leased to the Debtor. *See*, Randy Williams Deposition transcript, p. 38, ln. 17 through p. 39, ln. 3; p. 41, ln. 2 - 8. A copy of which is attached as **Exhibit 6** hereto.

26. In October 2008 the loan to Compass Bank was paid off. *See*, Kirkland Affidavit, ¶ 1. It is believed that the payoff was pursuant to a sale of the building. *See*, Trustee's Complaint.

E. **Value of Debtor's Leasehold Estate**

27. In 2006, the operations of Correct Care Clinic, LLC, and Garland Psychological Center began to wind down. *See*, Jester January Affidavit, ¶ 8.

28. As part of the Appraisal, Joseph N. Woller conducted an income approach to the value of the Property and determined that as of July 23, 2003 the market rental rate was $11,530.00. *See*, Appraisal, p. 47.

29. Martha Jester ("Jester") was engaged by Dr. Ronald Ziegler to provide accounting services for Dr. Ziegler's various companies. *See*, Jester January Affidavit, ¶ 2. These companies included, but are not limited to, Positive Pain Management, Inc., Positive Health Management, Inc., Garland Psychological Center ("Garland"), Correct Care Clinic, LLC ("CCC"), Ziegler Enterprises II, LLC ("Ziegler II"), and Ziegler Enterprises V, LLC ("Ziegler V"). *Id.* All of these entities are tax flow through entities. *Id.* None of the entities paid income tax. *Id.* All of the tax attributes flowed back through Dr. Ziegler. *Id.* The Debtor was a sub chapter S corporation. *Id.* Dr. Ziegler received a K-1 from each of the entities and all of the income and losses from the entities were reported on Dr. Ziegler's personal return. *Id.* Likewise, the various limited liability companies of Dr. Ziegler were also tax flow through entities. *Id.* Since Dr. Ziegler was the one who was ultimately responsible for the payment of income tax, the source of the income or loss from one entity or another was immaterial because the tax effect was not affected. *Id.*

30. During 2006, Dr. Ziegler's other two (2) operating companies, Garland and CCC had begun to wind down operations. *See*, Jester January Affidavit, ¶ 8.

31. Dr. Ziegler's companies were, from an accounting standpoint handled in a very haphazard way. *See*, Jester January Affidavit, ¶ 12. Dr. Ziegler was constantly in a frantic state regarding the payment of obligations by his companies and shortcuts were frequently taken. *Id.*

It was frequently the case that creditors were paid in a hurried manner to avoid such creditor instituting formal collection procedures. *Id.* Frequently bills charged to one company were paid for by another; however, they endeavored to properly account for the payments through intercompany transfers and on each company's books and records. *Id.* Dr. Ziegler's companies were not operated on an ideal basis; however, in the case of the payments to Compass Bank those payments were classified as the payment of rent to the Borrower on the respective books and records of the Debtor and the Borrower. *Id.*

## LEGAL ARGUMENT

### F. Summary Judgment Standard

32. This Court has previously set forth the applicable standard for summary judgment, as follows:

> Federal Rule of Civil Procedure 56(c), made applicable by Federal Rule of Bankruptcy Procedure 7056, provides that a court may grant summary judgment only if there is 'no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The movant bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The non-movant then must present affirmative evidence showing a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) *Id.;* Fed. R. Civ. P. 56(e) *Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.*, 475 U.S. 574, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) ("The opponent must do more than simply show that there is some metaphysical doubt as to the material facts."). The Court must "construe all evidence in the light most favorable to the non-moving party without weighing the evidence, assessing its probative value, or resolving any factual disputes." *Williams v. Time Warner Operation, Inc.*, 98 F.3d 179, 181 (5th Cir. 1996).

*In re McCombs*, 2007 WL 4411909 *3 (Bankr. S.D. Tex. December 17, 2007). The Bank, in filing this Motion as supported by the evidence set forth herein, believes that summary judgment is appropriate against the Trustee due to the absence of a genuine issue of material fact.

*Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006) *Condrey v. SunTrust Bank of Georgia*, 429 F.3d 556 (5th Cir. 2005).

33. The factual scenario in this case is more compelling to finding reasonable equivalent value than the factual situation of *Fairchild Aircraft Corp.* in which the Fifth Circuit found reasonably equivalent value. *Butler Aviation International, Inc. v. Whyte (In Matter of Fairchild Aircraft Corp.)*, 6 F.3d 1119 (5th Cir. 1993). In *Fairchild*, the Debtor was paying an affiliate's trade debt, because the debtor determined that it was beneficial to keep the affiliate afloat to prevent harm occurring to the debtor. *Id.* The Fifth Circuit agreed because of the importance of the affiliate's relationship to a major air carrier and the payments provided the debtor with continued good relations with the carrier. *Fairchild*, 6 F.3d at 1126. It was the interconnectedness of the debtor, the affiliate and the major carrier from which the debtor was receiving reasonably equivalent value. Here the Debtor (a tenant of the Borrower) was making payments to the Borrower's lender in lieu of paying rent to the Borrower. The Debtor benefitted because it retained its leasehold while keeping the Borrower's lender relatively current.

34. The Fifth Circuit noted that a "debtor need not collect a dollar-for-dollar equivalent to receive reasonable equivalent value." *Id.* at 1125-26. The Fifth Circuit noted that the debtor's decision must be evaluated as of the time of the decision to pay the trade vendor. *Id.* at 1126. The Fifth Circuit stated the appropriate test to determine whether the debtor received an economic benefit from the transaction. *Id.* at 1127.

35. Here, the Debtor was the tenant of the Borrower's under a five (5)-year lease. The appropriate value of that lease would have been determined at the time the lease was entered into, which was also the time the loan was made by Compass Bank to the Borrower. The leasehold value of the Property was determined by Mr. Woller at the time of the Loan. *See*,

Affidavit of Mr. Woller, ¶ 5; and Appraisal, pp. 45 - 49. That value was determined to be $11,530.00. *See*, Appraisal, p. 47.

36. The Debtor, by paying Compass Bank directly, was fulfilling the Debtor's obligation to the Borrower to pay rent and in return was receiving the peaceful use and enjoyment of its leasehold estate. Compass Bank had an assignment of the Debtor's rents and had the right to have the rent payments made directly to Compass Bank. *See*, Absolute Assignment of Rents, §§ 2.1, 2.2, 4.1, 4.2, 4.3, 4.4, and 5.1. The obligation of the Debtor to the Borrower for rent constituted part of Compass Bank's collateral. Not only did the Borrower understand that obligation but so too did the Debtor. *See*, Estoppel Certificate of Tenant executed by both the Debtor and the Borrower.

37. Here, there is a readily apparent relationship between the Debtor and the Borrower and there is the very real need for the Debtor to pay rent or in lieu thereof the Borrower's mortgage payment to allow the Borrower to retain the Property and to thereby provide the leased space to the Debtor. The synergy of the landlord/tenant relationship and the benefit received by the Debtor in retaining its leasehold estate is very apparent.

38. By way of example: If party A ships widget #1 to party B for $100.00 and party B ships widget #2 to party C; then C can satisfy its debt to B by paying B's obligation directly to party A. Each party receives reasonably equivalent value.



As the above diagram demonstrates C's payment to A (even though C and A have no contractual relationship) satisfies C's obligation to B as well as B's obligation to A. Each party to the first transaction receives what it was entitled to: B received the goods and A received $100.00. Likewise in the second transaction C received the goods and B was relieved of its obligation to A. The third transaction is not a fraudulent transfer as to C because C received the value of the goods from B. Although at first blush there may appear to be a fraudulent transfer by C to A, once the entire transaction is understood value is flowing to each party.

39.    Likewise here the Debtor received value as the following chart reflects. Compass Bank lent the Borrower $598,400.00 secured by the Property and the rents from the Property. The Borrower owed Compass Bank regularly scheduled monthly Note payments of $5,377.19. The Borrower in turn leased the Property to the Debtor. The monthly value of the leasehold was $11,530.00. The Debtor's payment of the lesser mortgage payment due by the Borrower to Compass Bank was certainly not harmful to the Debtor (although it may have been harmful to the Borrower). The Debtor received greater value than what it was entitled to, Compass Bank got what it was entitled to and the Borrower (not the Debtor) was "cheated" out of market rent.

930505.20100406/888528.1



In short it was the Borrower who received less than reasonably equivalent value; however it is the Debtor who is complaining.

### G. Trustee Cannot Prove an Essential Element of His Claim as to Compass Bank

40. Section 548(a)(B) of the Bankruptcy Code states, in relevant part, as follows: 11 U.S.C. § 548(a)(B).

"The trustee may avoid any transfer... made... within two (2) years before the date of the filing of the petition, if the debtor voluntarily...

(B)(i) received less than a reasonably equivalent value in exchange for such transfer...; and

(ii)(I) was insolvent on the date that such transfer was made...

11 U.S.C. § 548(a)(B)(i) and (ii). An essential element that the Trustee must prove is that the Debtor received less than a reasonably equivalent value in exchange for the transfers it made to Compass Bank.

41. The Trustee has the burden of proof as to reasonably equivalent value. *In re Hanover Corp*, 310 F.3d 796 (5th Cir. 2002). The Trustee must demonstrate that the Debtor did not receive reasonably equivalent value of the funds it transferred to Compass Bank. *ASARCO*

930505 20100406/888528.1

*LLC v. Americas Mining Corp.*, 396 B.R. 278, 336 (S.D. Tex. 2008). The issue of whether the Debtor received reasonable equivalent value involves a two (2) step process: first, did the Debtor receive any value; and second, was the value received reasonably equivalent value. *Id.* (citing *MDIP Inc.*, 332 B.R. 129, 133 (Bankr. D. Del. 2005). The Trustee must prove each of the elements of a fraudulent transfer. *Matter of Besing*, 981 F.2d 1488, 1494 (5th Cir. 1993); (citing *In re McConnell*, 934 F.2d 662, 665 n.1 (5th Cir. 1990)); *Floyd v. Option One Mortgage Corp. (In re Supplement Spot, LLC)*, 409 B.R. 187, 192, 199 (Bankr. S.D. Tex. 2009).

42. Here the Trustee's only evidence of lack of reasonably equivalent value is stated by the Trustee himself and merely amounts to the sophomoric view of the transaction that Compass Bank made a loan to the Borrower but received payment from the Debtor, a non-borrower. This ignores the reality and totally of the situation. The Debtor's payment to Compass Bank allowed it to satisfy its obligation to Borrower and also satisfied the Borrower's obligation to Compass Bank.

43. In this case, unlike in *Supplement Spot*, the Debtor did operate from the Property. The Debtor had a five (5)-year lease obligation to the Borrower, Compass Bank had an absolute assignment of the Debtor's rent obligations due to the Borrower, and the Debtor had executed an Estoppel thereby acknowledging Compass Bank's interests in the rents.

44. This case is aptly summarized by the following quote from the Eight Circuit BAP's decision in *In re Richards & Conover Steel Co.*

> It is true that transfers made "solely for [the] benefit of a [third] party do not furnish reasonably equivalent value." [cites omitted]. But "a transfer on behalf of a third party may produce a benefit that ultimately flows to the debtor, albeit indirectly. If the indirect benefit constitutes reasonably equivalent value to the debtor, a trustee cannot avoid the transfer as fraudulent." [cites omitted]. The party claiming to have delivered value must quantify it. [cite omitted]. As a leading commentator points out, the rule that a debtor who pays the debt of another normally does not receive value is subject to

> a rather large qualification… *Even though the debtor makes a transfer, or incurs an obligation for consideration that moves (in form or substance) directly to a third person, the debtor nevertheless receives value if she receives an economic benefit indirectly (in form or substance).* The consideration need not flow directly to her to satisfy the value component of reasonably equivalent value. Value requires only that the transfer result, whether directly or indirectly, in economic benefit running directly to someone else where… (2) the debtor and the other person share an identity of economic interests so that the debtor got some or all of the direct benefit straightforwardly even though, in form, it passed only to the other person because what benefits one will benefit the other.

*In re Richard & Conover Steel Co.*, 267 B.R. 602, 613-14 (8th Cir. BAP 2001) (citing *Epstein* § 6-49 at 28-30 (emphasis in original)).

45. Judge Rosenthal in *Smith v. American Founders Financial Corp.* held that when the debtor's transfer involves a third party the court looks at all aspects of the transaction to see if the debtor received either direct or indirect benefits. She stated:

> The analysis is slightly more complicated when, as here, the transfer involves a third party, because the benefit to the debtor may be harder to determine. A court should "examine all aspects of the transaction and carefully measure the value of all benefits and burdens to the debtor, direct or indirect." *In re Newtowne, Inc.*, 157 B.R. 374, 378-79 (Bankr. S.D. Ohio 1993) (quoting *In re Pembroke Dev. Corp.*, 124 B.R. 398, 400 (Bankr. S.D. Fla. 1991). …
>
> *In re Newtowne, Inc.*, 157 B.R. at 379, the court identified three (3) common scenarios in which a debtor's discharge of a third party's debt may be for reasonably equivalent value. The first is when the debtor's payment of a third party's debt results in a discharge of the debtor's own debt to the third party. *Id.* … The second scenario is when the debtor and the third party are so "related or situated that they share an identity of interests because what benefits one will benefit the other to some degree." *In re Newtowne, Inc.*, 157 B.R. at 379 (quoting *Pembroke Dev. Corp.*, 124 B.R. at 400). Finally, when a debtor "enjoys the benefits of the goods or services it bought for its principal, the transfer of money for those goods or services may not be avoided." *Id.*

*Smith v. American Founders Financial Corp.*, 365 B.R. 647, 666-67 (S.D. Tex. 2007). Here the Debtor fulfills the first scenario as demonstrated by the chart above. The Debtor also fulfills the second and third scenarios because the Debtor needed to maintain its leasehold estate and to do so had to be sure that the Borrower fulfilled its loan obligation.

17

930505.20100406/888528.1

46. Judge Rosenthal further stated that "[s]ome courts have held that an economic benefit reasonably equivalent to the disputed transfer may flow from a debtor's ability to keep his business in operation as a result of entering into the challenged transaction." *Id.* at 670 (citing *In re Fairchild Aircraft Corp.*, 6 F.3d, 1119, 1125 (5th Cir. 1993); *Mellom Bank, N.A. v. Metro Commons, Inc.*, 945 F.2d 635 (3rd Cir. 1991); *In re Pembroke Dev. Corp., 124 B.R. 398* (Bankr. S.D. Fla. 1991)).

47. This case is the inverse of *Supplement Spot*. Here direct benefits flowed to the Debtor for the mortgage payments it made to Compass Bank, because the Debtor leased the Property from the Borrower and operated from the Property. In *Supplement Spot*, this Court found that the debtor "never operated its business out of the properties whose loan balances were reduced..." *Id.* at 200. In this case the Debtor operated at the location for five (5) years and benefitted from its ongoing business and the fulfillment of its lease obligation.

WHEREFORE, PREMISES CONSIDERED, Compass Bank prays that the Court grant Compass Bank's Motion for Summary Judgment Regarding Reasonably Equivalent Value, that the Trustee has failed to prove a lack of reasonable equivalent value and therefore the Trustee

cannot carry his burden of proof, and dismiss Compass Bank from this Adversary Proceeding, and for such other and further relief as is just.

                    HIRSCH & WESTHEIMER, P.C.

By: /s/ Michael J. Durrschmidt
     Michael J. Durrschmidt
     Texas Bar No. 06287650
     700 Louisiana, Floor 25
     Houston, Texas 77002
     Telephone: 713-220-9165
     Facsimile: 713-223-9319
     E-mail: mdurrschmidt@hirschwest.com

**ATTORNEYS FOR DEFENDANT, COMPASS BANK**

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing Compass Bank's Motion for Summary Judgment Regarding Reasonably Equivalent Value was served by first class mail, postage prepaid, facsimile and/or electronic mail by the Clerk of the Court via the ECM/ECF system, as listed below on 2nd day of February, 2011.

Kirk A. Kennedy
Andrew Haut
The Kennedy Firm
P.O. Box 3502
Houston, Texas 77253

Eric Yollick
P.O. Box 7571
The Woodlands, TX 77387-7571

Leonard H. Simon
2777 Allen Parkway, Suite 800
Houston, TX 77019

Elizabeth N. Boydston
Fulbright & Jaworski, L.L.P.
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201

Mark A. Worden
Fulbright & Jaworski, L.L.P.
1301 McKinney, Suite 5100
Houston, Texas 77010

/s/ Michael J. Durrschmidt
Michael J. Durrschmidt