**In the United States Bankruptcy Court**
**For the Southern District of Texas**
**Houston Division**

| | | |
|---|---|---|
| In re | § | |
| | § | **Case Number 08-31630** |
| **Positive Health Management,** | § | |
| | § | **Chapter 7** |
| Debtor | § | |

| | | |
|---|---|---|
| **Randy Williams,** | § | |
| **Chapter 7 Trustee** | § | **Adversary No. 10-03121** |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| **BBVA Compass Bank F/K/A** | § | |
| **Compass Bank, First National Bank,** | § | |
| **Progressive County Mutual Insurance** | § | |
| **Company, and Synerimages** | § | |
| **Healthcare Consulting, LLC** | § | |
| | § | |
| Defendants. | § | |

### First National Bank's Motion for Summary Judgment

This motion seeks an order that may adversely affect you. If you oppose the motion, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the motion at the hearing.

To the Honorable Jeff Bohm, United States Bankruptcy Judge:

First National Bank ("FNB") files this Motion for Summary Judgment:

## Introduction and Summary Judgment Evidence

1.      FNB has filed this Motion for Summary Judgment on the following grounds[1]:

   A.      To the extent there were transfers, Plaintiff[2] received reasonably

   equivalent value.

   B.      There were no transfers, because Plaintiff did not own the assets in the

   first place.

   C.      There is no legally-cognizable evidence of Plaintiff's insolvency.

   D.      FNB merely received payments of its collateral under the Absolute

   Assignment of Leases, Rents, and Rights.

2.      Concurrent with the filing of this Motion for Summary Judgment, FNB has filed

the following separate instruments as summary judgment evidence:

   A.      2011 Affidavit of Martha Jester (the "2011 Jester Affidavit");

   B.      Affidavit of Linda Burley (the "Burley Affidavit");

   C.      Affidavit of Jeffrey S. Bradley (the "Bradley Affidavit"); and

   D.      Affidavit of Eric Yollick (the "Yollick Affidavit").

3.      Annexed to the Yollick Affidavit are three exhibits:

---

[1]  FNB has filed a counterclaim in this Adversary Proceeding.  At the pretrial conference, FNB clarified that FNB has asserted the counterclaim as a recoupment and that FNB is not seeking any affirmative relief in this Adversary Proceeding.  Therefore, FNB shall voluntarily dismiss the counterclaim - with the Court's permission - in the event that the Court were to grant this Motion for Summary Judgment.

[2]  FNB uses the terms "Plaintiff" and "Debtor" interchangeably in this Motion for Summary Judgment. One means the other and both, as FNB has used such terms in this Motion.

A.   Exhibit 1: Deposition transcript, dated December 14, 2010, of Plaintiff

Randy Williams, Chapter 7 Trustee ("Plaintiff's Deposition");

B.   Exhibit 2: Deposition transcript, dated December 14, 2010, of Plaintiff's

designated expert Jim Longaker (the "Longaker Deposition");

C.   Exhibit 3: Certified transcript of the June 16, 2010, 4:10 p.m. to 4:39 p.m.,

hearing before the Honorable Jeff Bohm, United States Bankruptcy Judge,

in *In re Positive Health Management, Inc.,*, Case Number 08-31630-H4-7,

in the United States Bankruptcy Court for the Southern District of Texas,

Houston Division, offered solely for the sworn testimony of Plaintiff

contained therein ("Plaintiff's Hearing Testimony");

D.   Exhibit 4: 2010 Affidavit of Martha Jester (the "2010 Jester Affidavit"),

which Plaintiff produced as an attachment to the report of Jim Longaker;

E.   Exhibit 5: official Certificate of Formation for Debtor filed in the Office of

the Secretary of State of Texas, an official copy of the Articles of

Incorporation of Positive Pain Management, Inc., an official copy of the

Articles of Amendment of Positive Pain Management, Inc., and the tax

forfeiture of Positive Pain Management, Inc. (the "Corporate

Documents").

F.   Exhibit 6: FNB's Request for Production to Plaintiff, dated July 6, 2010.

### Factual Background

3A.   Martha Jester ("Jester"), the accountant for Debtor and for Ronald Ziegler, has

provided at least two Affidavits, the 2010 Jester Affidavit and the 2011 Jester Affidavit.

3B.   Both of Jester's Affidavits and the documents appended to the Affidavits filed concurrently with this Motion for Summary Judgment reveal:

    A.   Ronald Ziegler formed Positive Pain Management, Inc. ("PPM") in 1995.

    B.   PPM assumed the name "Positive Health Management" later in 1995 and then abandoned that name in September, 2006.

    C.   Ronald Ziegler formed Positive Health Management, Inc., Debtor, in September, 2006.  Debtor filed tax returns and conducted business as though it were the same company as PPM.

3C.   Plaintiff admitted in his testimony in this case two critical facts:

    A.   Plaintiff does not know whether Plaintiff was insolvent.  *See* Plaintiff's Hearing Testimony; Plaintiff's Deposition at 24-26.

    B.   PPM never made an effective transfer to Debtor of any assets, so Debtor may have used the assets of PPM but they were the assets of PPM.  *See* Plaintiff's Deposition at 17-20.

4.   On or about March 30, 2006, the Bank made a loan in the amount of $2,625,000.00 (the "Loan") to the Borrower, which was secured by real property at 2301 Forest Lane in Garland, Texas (the "Property").  Burley Affidavit at ¶ 2. The Loan was evidenced by a Promissory Note (the "Note") and secured by a Deed of Trust and Security Agreement ("Deed of Trust") and an Absolute

Assignment of Leases, Rents and Rights ("Assignment"). *Id.* True and correct copies of the Note, Deed of Trust, and Assignment are attached to the Burley Affidavit as Exhibits.

5.      The Loan was guaranteed by Positive Pain Management, Inc., and Ronald Ziegler ("Guaranty Agreement"). Burley Affidavit at ¶ 3. A true and correct copy of the Guaranty Agreement is attached to the Burley Affidavit at an Exhibit. *Id.*

6.      The Borrower and the Debtor executed an Subordination of Tenant to Lien, Estoppel, and Attornment Agreement ("Subordination Agreement") representing, among other things, that the Debtor subordinated its leasehold interest to the Bank's liens and agreed to pay the Bank rentals in the event of default. Burley Affidavit at ¶ 4. A true and correct copy of the Subordination Agreement is attached to the Burley Affidavit as an Exhibit. *Id.* A true and correct copy of the rent rolls provided to First National Bank from the Borrower and from Positive Health Management are attached to the Burley Affidavit as an Exhibit. *Id.*

7.      The Trustee complains about payments from the Debtor to the Bank; however, the Borrower was habitually delinquent in the payment of the Note. Burley Affidavit at ¶ 5. Regular monthly payments due under the Note were in the amount of $27,259.84. *Id.* Payments in excess of those amounts during certain amounts reflected late payments plus late fees and other applicable charges under the Loan. *Id.* Based on the Trustee's Complaint, he is seeking the return of what would have been the regular monthly Note payments for the period from approximately

December, 2006, through the end of January, 2008.  *Id*.  During this fourteen (14)

month time period, the Bank should have been paid, if the payments were timely

paid, $381,637.76 (Regular monthly payment of $27,259.84 multiplied by 14).  *Id*.

7A.   The Affidavit of Jeffrey S. Bradley and appraisal report annexed thereto reveal

that the payments which FNB received were less than the fair market rent for the

space which Debtor occupied during the period in question.  It is significant to

note that Jeffrey S. Bradley prepared the appraisal report for Texas Capital Bank,

the creditor from whom Plaintiff's counsel, Kirk Kennedy, purchased a judgment

in order to become a creditor through his company, Bankruptcy Trading &

Investments, Inc.

8.   The Borrower was formed shortly before the Loan was made by the Bank.  Burley

Affidavit at ¶ 6.  The Bank knew that the income from the leases was to be the

primary source of repayment of the Loan, based upon information that the

Borrower and Dr. Ronald Ziegler provided to the Bank to that effect.  *Id*.

9.   The rent payments made directly by Debtor to First National Bank allowed the

Borrower to stay relatively current with the Borrower's mortgage obligation and

prevented First National Bank from initiating foreclosure proceedings until 2008.

Burley Affidavit at ¶ 7.  A foreclosure may have dispossessed the Debtor from its

leased premises in the Property.  *Id*.

10.   Plaintiff never produced any general ledgers of Positive Health Management to

First National Bank in this Adversary Proceeding, although Plaintiff did produce

some bank account reconciliation details and some accounts receivable aging

reports for Positive Health Management, for Positive Pain Management, Inc., and

for some related entities.  Burley Affidavit at ¶ 8.

9.      Attached to the Burley Affidavit as an Exhibit are true and correct copies of tax

returns provided to FNB from the Debtor, from Positive Pain Management, Inc.,

and from Ronald Ziegler and upon which the Bank relied to support the Loan.

Burley Affidavit at ¶ 9.

10.      Attached to the Burley Affidavit as an Exhibit is a true and correct copy of a Loan

Agreement which Positive Pain Management, Inc., executed in which Positive

Pain Management, Inc., agreed to guaranty another loan of First National Bank to

Ziegler Enterprises III, L.L.C.  Burley Affidavit at ¶ 10.  That loan was in default

as well as the Garland Loan.  *Id.*

11.      Since the corporate charter of Positive Pain Management, Inc., lapsed and since

the assets of that entity seemed to disappear, the Bank was not able to collect on

or pursue Positive Pain Management, Inc.'s Guaranty with respect to the Garland

Loan.  Burley Affidavit at ¶ 11.  First National Bank sued Dr. Ronald Ziegler on

that Loan for the deficiency owed to the Bank after the foreclosure.  *Id.*  A true

and correct copy of the Final Judgment for the deficiency - after the arbitration

award - is annexed to the Burley Affidavit.  *Id.*  It is now apparent from the

Affidavit of Martha Jester and from the Affidavit of Jim Longaker in this

Bankruptcy Proceeding that Positive Pain Management, Inc., was left with no

assets, if there was an effective conveyance to Positive Health Management, Inc., in September, 2006. *Id.* First National Bank has been unable to collect on its Final Judgment on the Garland Loan deficiency (other than approximately $20,000), because Positive Pain Management, Inc., and its assets seemed to have disappeared. *Id.*

## Relief Sought

12.    The Court should grant a summary judgment, pursuant to Bankruptcy Rule 7056 and Federal Rule of Civil Procedure 56, that Plaintiff takes nothing of or from FNB.

## Legal Authorities and Analysis in Support of Relief Sought

### O.    Summary Judgment Standard

13.    This Court has previously set forth the applicable standard for summary judgment, as follows:

> Federal Rule of Civil Procedure 56(c), made applicable by Federal Rule of Bankruptcy Procedure 7056, provides that a court may grant summary judgment only if there is 'no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The movant bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The non-movant then must present affirmative evidence showing a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) *Id.;* Fed. R. Civ. P. 56(e) *Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.,* 475 U.S. 574, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) ("The opponent must do more than simply show that there is some metaphysical doubt as to the material facts."). The Court must "construe all evidence in the light most favorable to the non-moving party without weighing the

evidence, assessing its probative value, or resolving any factual disputes."

*In re McCombs*, 2007 WL 4411909 *3 (Bankr. S.D. Tex. December 17, 2007). There is no genuine issue of material fact, so that the Court should grant a summary judgment in favor of FNB as a matter of law. *See Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006).

**A.**      **To the extent there were transfers, Plaintiff received reasonably equivalent value.**

14.    The factual scenario in this case is more compelling to finding reasonable equivalent value than the factual situation of *Fairchild Aircraft Corp*. in which the Fifth Circuit found reasonably equivalent value. *Butler Aviation International, Inc. v. Whyte (In Matter of Fairchild Aircraft Corp.)*, 6 F.3d 1119 (5th Cir. 1993). In *Fairchild*, the Debtor was paying an affiliate's trade debt, because the debtor determined that it was beneficial to keep the affiliate afloat to prevent harm occurring to the debtor. *Id*. The Fifth Circuit agreed because of the importance of the affiliate's relationship to a major air carrier and the payments provided the debtor with continued good relations with the carrier. *Fairchild*, 6 F.3d at 1126. It was the interconnectedness of the debtor, the affiliate and the major carrier from which the debtor was receiving reasonably equivalent value. Here the Debtor (a tenant of the Borrower) was making payments to the Borrower's lender in lieu of paying rent to the Borrower. The Debtor benefitted because it retained its leasehold while keeping the Borrower's lender relatively current.

**First National Bank's Motion for Summary Judgment - Page 9**

15.     The Fifth Circuit noted that a "debtor need not collect a dollar-for-dollar

equivalent to receive reasonable equivalent value." *Id.* at 1125-26. The Fifth

Circuit noted that the debtor's decision must be evaluated as of the time of the

decision to pay the trade vendor. *Id*. at 1126. The Fifth Circuit stated the

appropriate test to determine whether the debtor received an economic benefit

from the transaction. *Id.* at 1127.

16.     Here, Debtor was a tenant of Borrower's and received a leasehold which exceeded

the value of the amounts which Debtor paid to FNB on behalf of Borrower.

17.     Section 548(a)(B) of the Bankruptcy Code states, in relevant part, as follows:

11 U.S.C. § 548(a)(B).

> "The trustee may avoid any transfer... made... within two (2)
>
> years before the date of the filing of the petition, if the debtor
>
> voluntarily...
>
> (B)(I) received less than a reasonably equivalent value in
>
> exchange for such transfer...; and
>
> (ii)(I) was insolvent on the date that such transfer was made...

11 U.S.C. § 548(a)(B)(I) and (ii). An essential element that the Trustee must prove

is that the Debtor received less than a reasonably equivalent value in exchange for the

transfers it made to FNB.

18.     The Trustee has the burden of proof as to reasonably equivalent value. *In re Hanover

Corp*, 310 F.3d 796 (5th Cir. 2002). The Trustee must demonstrate that the Debtor

**First National Bank's Motion for Summary Judgment - Page 10**

did not receive reasonably equivalent value of the funds it transferred to FNB. *ASARCO LLC v. Americas Mining Corp.*, 396 B.R. 278, 336 (S.D. Tex. 2008). The issue of whether the Debtor received reasonable equivalent value involves a two (2) step process:  first, did the Debtor receive any value; and second, was the value received reasonably equivalent value.  *Id.* (citing *MDIP Inc.*, 332 B.R. 129, 133 (Bankr. D. Del. 2005).  The Trustee must prove each of the elements of a fraudulent transfer.  *Matter of Besing*, 981 F.2d 1488, 1494 (5th Cir. 1993); (citing *In re McConnell*, 934 F.2d 662, 665 n.1 (5th Cir. 1990)); *Floyd v. Option One Mortgage Corp. (In re Supplement Spot, LLC)*, 409 B.R. 187, 192, 199 (Bankr. S.D. Tex. 2009).

19.     Here the Trustee's only evidence of lack of reasonably equivalent value is stated by the Trustee himself and merely amounts to the sophomoric view of the transaction that FNB made a loan to the Borrower but received payment from the Debtor, a non-borrower. This ignores the reality and totally of the situation. The Debtor's payment to FNB allowed it to satisfy its obligation to Borrower and also satisfied the Borrower's obligation to FNB.

20.     In this case, unlike in *Supplement Spot*, the Debtor did operate from the Property. The Debtor had a lease obligation to the Borrower, FNB had an absolute assignment of the Debtor's rent obligations due to the Borrower, and the Debtor had executed an Estoppel thereby acknowledging FNB's interests in the rents.

**First National Bank's Motion for Summary Judgment - Page 11**

21.     This case is aptly summarized by the following quote from the Eight Circuit BAP's

decision in *In re Richards & Conover Steel Co.*:

> It is true that transfers made "solely for [the] benefit of a
> [third] party do not furnish reasonably equivalent value."
> [cites omitted]. But "a transfer on behalf of a third party may
> produce a benefit that ultimately flows to the debtor, albeit
> indirectly. If the indirect benefit constitutes reasonably
> equivalent value to the debtor, a trustee cannot avoid the
> transfer as fraudulent." [cites omitted]. The party claiming
> to have delivered value must quantify it. [cite omitted]. As
> a leading commentator points out, the rule that a debtor who
> pays the debt of another normally does not receive value is
> subject to a rather large qualification... *Even though the
> debtor makes a transfer, or incurs an obligation for
> consideration that moves (in form or substance) directly to a
> third person, the debtor nevertheless receives value if she
> receives an economic benefit indirectly (in form or
> substance)*. The consideration need not flow directly to her to
> satisfy the value component of reasonably equivalent value.
> Value requires only that the transfer result, whether directly
> or indirectly, in economic benefit running directly to someone
> else where... (2) the debtor and the other person share an
> identity of economic interests so that the debtor got some or
> all of the direct benefit straightforwardly even though, in
> form, it passed only to the other person because what benefits
> one will benefit the other.

*In re Richard & Conover Steel Co.*, 267 B.R. 602, 613-14 (8th Cir. BAP 2001) (citing

*Epstein* § 6-49 at 28-30 (emphasis in original)).

22.     Judge Rosenthal in *Smith v. American Founders Financial Corp.* held that when the

debtor's transfer involves a third party the court looks at all aspects of the transaction

to see if the debtor received either direct or indirect benefits. She stated:

> The analysis is slightly more complicated when, as here, the
> transfer involves a third party, because the benefit to the
> debtor may be harder to determine. A court should "examine

**First National Bank's Motion for Summary Judgment** – Page 12

all aspects of the transaction and carefully measure the value
of all benefits and burdens to the debtor, direct or indirect."
*In re Newtowne, Inc.*, 157 B.R. 374, 378-79 (Bankr. S.D.
Ohio 1993) (quoting *In re Pembroke Dev. Corp.*, 124 B.R.
398, 400 (Bankr. S.D. Fla. 1991). ...In *In re Newtowne, Inc.*,
157 B.R. at 379, the court identified three (3) common
scenarios in which a debtor's discharge of a third party's debt may be for
reasonably equivalent value. The first is when the debtor's payment of a third
party's debt results in a discharge of the debtor's own debt to the third party.
*Id.* ... The second scenario is when the debtor and the third party are so
"related or situated that they share an identity of interests because what
benefits one will benefit the other to some degree." *In re Newtowne, Inc.*,
157 B.R. at 379 (quoting *Pembroke Dev. Corp.*, 124 B.R. at 400). Finally,
when a debtor "enjoys the benefits of the goods or services it bought for its
principal, the transfer of money for those goods or services may not be
avoided." *Id.*

*Smith v. American Founders Financial Corp.*, 365 B.R. 647, 666-67 (S.D. Tex.

2007). Here the Debtor fulfills the first scenario. The Debtor also fulfills the second

and third scenarios because the Debtor needed to maintain its leasehold estate and to

do so had to be sure that the Borrower fulfilled its loan obligation.

23.     Judge Rosenthal further stated that "[s]ome courts have held that an economic benefit

reasonably equivalent to the disputed transfer may flow from a debtor's ability to

keep his business in operation as a result of entering into the challenged transaction."

*Id.* at 670 (citing *In re Fairchild Aircraft Corp.*, 6 F.3d, 1119, 1125 (5th Cir. 1993);

*Mellom Bank, N.A. v. Metro Commons, Inc.*, 945 F.2d 635 (3rd Cir. 1991); *In re*

*Pembroke Dev. Corp., 124 B.R. 398* (Bankr. S.D. Fla. 1991)).

24.     This case is the inverse of *Supplement Spot.* Here direct benefits flowed to the

Debtor for the mortgage payments it made to FNB, because the Debtor leased the

Property from the Borrower and operated from the Property.  In *Supplement Spot*,

**First National Bank's Motion for Summary Judgment** - Page 13

this Court found that the debtor "never operated its business out of the properties whose loan balances were reduced..." *Id.* at 200.  In this case the Debtor operated at the location for five (5) years and benefitted from its ongoing business and the fulfillment of its lease obligation.

**B.**     **There were no transfers, because Plaintiff did not own the assets in the first place.**

25.     Plaintiff admitted in his deposition that PPM never took any action to transfer any of the assets which Debtor used to Debtor.

26.     Section 548 of the Bankruptcy Code only applies to an interest of the Debtor in property.  11 U.S.C. § 548(a)(1).  Similarly, transfers under Texas law only apply to "assets" which are property of the debtor.  Tex. Bus. & Com. Code Ann. § 24.002(2)(A) (Vernon 2011).

27.     In this instance, Plaintiff must show that the property transferred was property of Debtor.  The problem for Plaintiff, however, is that Plaintiff admitted in his deposition that there was never an effective transfer of assets to Debtor from PPM.  Furthermore, the Affidavits of Jester and the tax returns of PPM and Debtor reveal that Debtor merely took on the assets of PPM as though they were Debtor's assets, when, in fact, they were the assets of PPM.

**C.**     **There is no legally-cognizable evidence of Plaintiff's insolvency.**

28.     Plaintiff must show insolvency under most of Plaintiff's federal and state law claims.

**First National Bank's Motion for Summary Judgment - Page 14**

29.   Plaintiff admitted in Plaintiff's Hearing Testimony before this Court that he did not know whether Debtor was insolvent at the time of the alleged transfers and alleged preference payments. *See* Plaintiff's Hearing Testimony at 16-17.

30.   Plaintiff admitted that Plaintiff did not have the full set of books and records of Debtor or the other Ziegler entities. *Id.*

31.   Interestingly, Plaintiff's designated expert Jim Longaker has rendered lengthy opinions regarding the insolvency of Debtor. Nevertheless, the Court should not consider those opinions and should disregard the testimony of Jim Longaker.

32.   In the Longaker Deposition, Jim Longaker admitted that he based his analysis of Debtor's insolvency and financial condition during the relevant periods on a review of documents other than those appended to his report. Most importantly, Jim Longaker testified that he reviewed hard copies of Debtor's general ledger reports generated from Peachtree accounting software. Longaker Deposition at 12-13.

33.   Plaintiff failed to produce those general ledger reports to FNB even though Longaker admitted that he relied upon those documents. Burley Affidavit at ¶ 8. Under Rule 26(a)(2), Plaintiff had a duty to disclose and produce to FNB the general ledgers used to support Jim Longaker's opinions. Furthermore, FNB sent a request for production to Plaintiff that specifically requested all financial books and records of Debtor. Exhibit "6" to Yollick Affidavit, at #9. The documents upon which Jim Longaker relied were directly responsive to that request for

**First National Bank's Motion for Summary Judgment - Page 15**

production.

34.     An incomplete disclosure is a failure to disclose.  Fed. R. Civ. P. 37(a)(4).  If a

party fails to disclose information under Rule 26(a) or 26(e), then the party is not

allowed to use that information or witness.

35.     In this instance, Plaintiff never produced the general ledgers which formed the

bases of Jim Longaker's opinions regarding the alleged insolvency of Debtor at

the time of the alleged transfers.

**D.      FNB merely received payments of its collateral under the Absolute**

**Assignment of Leases, Rents, and Rights.**

35A.    Plaintiff has also made a preference claim against FNB.

36.     Debtor did not pay any rent to the Borrower, even though the rent rolls showed a

rent obligation and even though Debtor enjoyed use of the leasehold at the

Property for which the fair market value exceeded the payments by Debtor to

FNB.  2011 Jester Affidavit at ¶ 6-12; Bradley Affidavit.

37.     It is undisputed that all of those rent payments fell within the collateral and

security interest of FNB under the Absolute Assignment of Leases, Rents, and

Rights.

38.     Preference law exempts secured creditors from its grasp.  *Braniff Airways, Inc. v.*

*Exxon Co., U.S.A.,* 814 F.2d 1030, 1034 (5th Cir.1987)*; Matter of Missionary*

*Baptist Found. of Am., Inc.,* 796 F.2d 752, 759 (5th Cir. 1986).

39.     Section 547(b)(5) is premised upon the Bankruptcy Code's acknowledgment that a

**First National Bank's Motion for Summary Judgment - Page 16**

valid security interest survives a liquidating bankruptcy, and to the extent that a creditor is fully secured, payment to that creditor in satisfaction of the security interest is not a preferential transfer. *Emerson v. Fed. Sav. Bank ( In re Brown),* 209 B.R. 874, 885 (Bankr. W.D. Tenn.1997); *see also Powerine Oil Co.,* 59 F.3d at 972; *Sloan v. Zions First Nat'l Bank ( In re Castletons, Inc.),* 990 F.2d 551, 554 (10th Cir.1993) (citation omitted); *Ray v. City Bank and Trust Co. ( In re C-L Cartage Co.),* 899 F.2d 1490, 1493 (6th Cir.1990); *Braniff Airways, Inc. v. Exxon Co., U.S.A.,* 814 F.2d 1030, 1034 (5th Cir.1987).

40.     FNB received no payments that did not constitute its collateral.

41.     As a result, the payments could not constitute preferences as a matter of law.

## Prayer

For the foregoing reasons, First National Bank prays that the Court grant this Motion for Summary Judgment, determine that Plaintiff shall take nothing of or from First National Bank by judgment or otherwise, and grant such other and further relief to which First National Bank may show itself justly entitled.

Respectfully submitted on this 21st day of February, 2011.

**First National Bank's Motion for Summary Judgment - Page 17**

/s/ Eric Yollick
Eric Yollick
Federal Bar Number 12960
State Bar Number 22160100
Post Office Box 7571
The Woodlands, Texas 77387-7571
Telephone 281.363.3591
Telecopier 281.363.0488
Ericyollick@swbell.net

Attorney in Charge for First National Bank

## Certificate of Service

I served this instrument, as well as all Affidavits filed concurrently herewith, on this 21st day of February, 2011, by electronic service to all counsel of record, and by email as follows:

Kirk Kennedy, Counsel for Plaintiff, *Via Email kkennedy@kennedyfirmtexas.com*

Michael Durrschmidt, Counsel for BBVA Compass Bank, *Via Email mdurrschmidt@hirschwest.com.*

/s/ Eric Yollick
Eric Yollick